IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ELIZABETH LAURA CHOIKE, et al., )
on behalf of themselves and all similarly )
situated individuals, )
    Plaintiff, )
)
    vs. )    Civil Action No. 6-622
)
SLIPPERY ROCK UNIVERSITY OF )
PENNSYLVANIA OF THE STATE )
SYSTEM OF HIGHER EDUCATION, )
)
    Defendant. )

AMBROSE, District Judge

## OPINION AND ORDER OF COURT

### Synopsis

Student athletes previously brought a Title IX action against their University. The parties reached a Settlement Agreement which contemplated ongoing monitoring by the Students until the University achieved compliance. The Students have filed a Motion for Attorneys' Fees and Costs [Docket No. 157] incurred as a result of such monitoring and the negotiation of Amendments to the Settlement Agreement. The University opposes the Motion, contending that the request for some fees is untimely, that some of the requested hourly rates are unreasonable and that the number of hours worked on particular tasks is excessive and redundant. The

1

University also objects to the request for costs. I find some of the University's arguments to be persuasive. Accordingly, the Motion is granted in part and denied in part.

**Opinion**

The Students move pursuant to 42 U.S.C. § 1988(b) and F.R.C.P. 54(d) for an award of all reasonable attorney's fees and costs incurred since they last filed a Motion for Fees on August 3, 2007. The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, permits a district court to award reasonable attorney's fees to prevailing parties in civil rights litigation. Because the purpose of such an award is to "ensure 'effective access to the judicial process' for persons with civil rights grievances … a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Henley v. Eckhart, 461 U.S. 424, 429, 103 S. Ct. 1933, 1937 (1983), quoting, H.R. Rep. No. 94-1011, p. 4 (1976).

The University challenges the Motion in several respects. It raises a threshold issue of the timeliness of the fee request. It also contends that the Students fail to qualify as a "prevailing party." It disputes the reasonableness of the hourly rates requested and it charges that the hours devoted to a number of the tasks were excessive and redundant and therefore not "reasonable." The University also urges that it should not have to pay for some of the costs being requested. I will address its challenges *seriatim*.

A.  Timeliness

Turning to the threshold issue of timeliness, the Students seek the award of all fees and costs incurred "since they last filed a motion for attorneys' fees and costs on August 3, 2007." See Docket No. [157]. The Motion is made pursuant to 42 U.S.C. § 1988(b) and F.R.C.P. 54(d). Rule 54(d) provides, in part, that:

2

> Unless a statute or a court order provides otherwise, the motion must:
> (i) Be filed no later than 14 days after the entry of judgment… .

F.R.C.P. 54(d). "Judgment" is defined in Rule 54(a) to include "a decree and any order from which an appeal lies." The University contends that several of the Students' requests for attorney's fees may be denied as untimely.[1]

I agree with the University that the Students' requests relating to the Save Slippery Rock Wrestling ("SSRW") appeals are untimely. Indeed, on October 30, 2009, the Third Circuit Court of Appeals entered an order affirming this Court's denial of SSRW's Motion to Intervene. Judgment was entered that same day. See Choike v. Slippery Rock, No. 7-1537 (3d Cir. Oct. 30, 2008). With respect to a subsequent appeal relating to approval of the Settlement Agreement, the Third Circuit Court of Appeals issued a case dispositive order which served as the Court's judgment on February 24, 2010. See Choike v. Slippery Rock, No. 7-4466 (3d Cir. Feb. 24, 2010). Both of these judgments are "final." The pending requests for attorney's fees associated with these appeals were filed well beyond the 14 day limit set forth in Rule 54. The Students have not identified any case law or federal rule indicating that they were somehow precluded from seeking the recovery of fees associated with these appeals during the past year. Such an argument would indeed be curious given that the Students sought and received compensation for opposing SSRW at the district court level. Accordingly, the request for attorney's fees and costs associated with the SSRW appeals is denied as untimely.

I also find to be untimely, the Students' request for fees and costs associated with the 2007 Settlement Agreement and the 2007 Fee Petition. This Court issued Findings of Fact and Conclusions of Law and a Consent Order pertaining to the Settlement Agreement on August 8,

---

[1] Although the University challenged the Students' ability to recover fees associated with the Motion to Enforce the Fee Petition filed in 2007, the Students have clarified that they no longer seek compensation in this regard.

3

2007. See Docket No. [115]. The case was thereafter closed and terminated on August 9, 2007. Because the parties settled the case, no "judgment" within the meaning of Rule 54 would have been entered on the docket, but the consent order entered on August 8, 2007 is tantamount to the same. All claims had finally been adjudicated and the time was ripe for filing requests for attorney's fees and costs.

Indeed, the Students had already done so. Their 2007 Fee Petition was adjudicated by Opinion and Order dated October 22, 2007. See Docket No. [121]. Consequently, the Students' current request, lodged almost two and one half years after the work relating to that Settlement Agreement was completed, is clearly beyond the 14 day time period contemplated by Rule 54.

I reach a different conclusion, however, with respect to the timeliness of fees requested for work done in connection with the 2009 Motion to Enforce, the 2009 Mediation and the 2009 Settlement Agreement. The original Settlement Agreement contemplated monitoring by the Students and their attorneys to ensure compliance. A 2009 Motion to enforce was filed because the University again failed compliance tests. With the capable aid of Magistrate Judge Lenihan, the parties mediated their differences and reached a proposed Amended Settlement. On February 16, 2010, this Court held a hearing during which time it entered an Order adopting Findings of Fact, Conclusions of Law and a Consent Order as well as the Amended Settlement Agreement. See Docket Nos. [154-155].

Significantly, however, notice was also given at that time, that the Students intended to file a Petition for Attorney's Fees. See Docket No. [153]. The Court did not impose a deadline for the filing of the Petition nor did the University ask for one. Because the University was on notice of the imminent filing of the Motion, I find that the requests in this regard – even though filed two months after the entry of the consent order – were timely filed.

B. Prevailing Party

The University also challenges the Students' prevailing party status. "'Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" Hensley v. Eckhart, 461 U.S. 424, 433 (1983). Here, the Students obtained an expansion of relief in the Amendments to the Settlement. I view this expansion as a success on significant issues. Consequently, the Students qualify as a "prevailing party."

C. Reasonable Hourly Rates

The question remains, however, what fee is "reasonable." In considering a fee petition in a Title IX case:

> courts apply the "lodestar" formula, which multiplies "the number of hours reasonably expended by a reasonable hourly rate." Maldonado v. Houston, 256 F.3d 181, 184 (3d Cir. 2001). "When the applicant for fee has carried his burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." Id.

Barrett v. West Chester University, Civ. No. 3-4978, 2006 WL 859714 at * 3(E.D. Pa. March 31, 2006) (citations omitted). Accordingly, I must consider whether the proposed hourly rates are "reasonable," and whether the number of hours requested was "reasonably expended."

First, I must determine what constitutes a "reasonable market rate for the essential character and complexity of the legal services rendered… ." Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001). I do this by "'assessing the experience and skill of the prevailing party's attorneys and compare the rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" Loughner v. University of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001). The starting point is the hourly rate usually charged by the attorney, but this is not dispositive. Public Interest Research Group of New Jersey, Inc. v.

Windall, 51 F.3d 1179, 1185 (3d Cir. 1995). The Plaintiff bears the burden of establishing the reasonable current market rate. Public Interest, 51 F.3d at 1185. The current market rate is measured at the time the fee petition is submitted, rather than at the time the services were performed. Lanni, 259 F.3d at 149 (citations omitted).[2]

The Students seek fees for services performed by attorneys and paralegals from the Flaster/Greenberg law firm and from the Women's Law Project ("WLP"). The requested hourly rates are as follows:

| Flaster / Greenberg: | | WLP: | |
|---|---|---|---|
| Abbe Fletman | $475 | Terry Fromson | $390 |
| Lizanne Hackett | $325 | Susan Frietsche | $305 |
| Sherrie Ireland | $210 | Christina Cann | $80 |

I note that the University does not challenge the reasonableness of the fees charged by Fromson, Frietsche and Cann of the WLP. I have reviewed their CVs and the affidavits submitted in support thereof and find their fees reasonable in light of such evidence and of the complexity of the litigation involved.

The University does, however, challenge the fees requested by Flaster / Greenberg. Significantly, the Students have submitted evidence that demonstrates that the rates identified above are, in fact, those charged by Fletman / Greenberg. See Docket No. [159-5]. Additionally, the materials provided by Abbe Fletman convince me that she has an excellent reputation in the legal community and that she is an accomplished advocate. She heads her firm's Litigation Section of the Intellectual Property Practice Group, she was voted by members of the Pennsylvania Bar as a Pennsylvania Super Lawyer in 2004 and 2006 through 2010, and she is a fellow at the Academy of Advocacy of Temple University Beasley School of Law,

---

[2] For this reason, I find the University's objection to the Students' demand for the fees at which the attorneys currently bill, rather than the fee at which they billed when the work was performed, to be unpersuasive.

where she serves as an instructor for the LLM in trial advocacy. See Docket No. 159-5. She is also a past co-chair of the Federal Courts Committee of the Philadelphia Bar Association. Id. Lizanne Hackett similarly has a good reputation. The materials submitted indicate that she is a member of her firm's Litigation and Labor and Employment practice groups. Id. She graduated cum laude from Harvard Law School in 2002. She practices in both state and federal court and has previously been involved in discrimination cases. Id. It appears that Sherrie Ireland's reputation also supports her fee request. She is a paralegal and has more than 22 years of experience. Id.

The Students have also submitted affidavits which convince me that the rates submitted on behalf of Abbe Fletman and Lizanne Hackett are reasonable. The affidavits are from attorneys who practice in the Western District of Pennsylvania and the attorneys providing the affidavits attest to the fact that the requested fees are reasonable and within the prevailing market rates. See Docket No. [159-7] (Stember and Doyle Affidavits).

Consequently, I find that the Students have sustained their *prima facie* burden of establishing that the rates requested above are reasonable, given the experience, skill and reputation of the attorneys involved, the complex matter of this litigation, and the prevailing market rates. The University has not submitted any affidavits stating that the fees requested by the Students' attorneys are unfair or unreasonable or are otherwise not in accord with the prevailing market rates. Accordingly, given the absence of any conflicting evidence as well as the fact that the parties have not requested a hearing on the issue of an hourly rate, I find that the Students have satisfied their burden of establishing the reasonableness of the requested hourly fees.

D. <u>Hours Reasonably Expended</u>

The "lodestar" formula requires me to next determine the number of hours reasonably expended on this litigation. The Supreme Court has cautioned that, in determining whether hours were reasonably expended, courts should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise." Maldonado v. Houston, 256 F.3d 181, 184 (3d Cir. 2001) (citations omitted). "Hours that would not generally be billed to one's own client are not properly billed to an adversary." Public Int. Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995).

The Students request a total of $38,395.75 in attorney's fees for the hours expended by members of Flaster / Greenberg and $83,844.82 in attorney's fees for the hours expended by members of the WLP. The University contends that the hours requested must be reduced both for redundancy and for excessiveness. For instance, with respect to the category of "monitoring," the University contends that the Students request duplicative and excessive fees related to time spent preparing for and attending interviews occurring on January 6 and 7, 2009 by Attorneys Fromson and Frietsche. See Docket No. [162].[3] The time sheets submitted in conjunction with the Students' Motion do reflect charges by both Fromson and Frietsche associated with those interviews. See Docket No. [159-4], Exs., D and E. Yet in response to the University's charge of redundant and excessive billing, the Students state that they "request fees only for time on January 6 and 7, 2009 during which Fromson herself prepared for and conducted an interview." See Docket No. [166], p. 5. Accordingly, all time submitted on behalf

---

[3] The University's generic objection to requests for fees by Fletman and Hackett with respect to monitoring work because "the WLP attorneys (or staff) performed the bulk of the monitoring work," is unpersuasive. There is no detailed analysis presented regarding what work was duplicative, on what days, and with reference to what specific tasks. Consequently, I decline to reduce fees in this regard.

8

of Susan Frietsche associated with the July 6 and 7, 2009 interviews shall be excluded from the fees ultimately recovered by the Students.

The University also objects to the time Attorney Fletman charged in conjunction with interviews of the coaches conducted in 2010. According to the University, Fletman's role was limited to reviewing notes and giving advice to other attorneys who were actually conducting the interviews and who are seeking fees for work performed in conjunction with the same. I agree that Ms. Fletman's billing for these interviews appears duplicative. Her billing entries merely reflect "consider response to coach interviews; review and consider notes from coach interviews: and "consider response to coach interviews." See Docket No. [59-5], Ex. 2. These entries do not indicate that Ms. Fletman made any meaningful, independent contribution to the issue of coach interviews. Further, the Students offer no response to the University's challenge to the alleged duplicative billing in this regard. Consequently, I agree with the University that the Student's fees should be reduced by the amount Ms. Fletman billed in this regard.

The University makes a similar argument with respect to time logged by Ms. Hackett in 2008 for hours spent reviewing and considering correspondence regarding coach interviews. See Docket No. [159-5], Ex. 2. Again, I see nothing in Ms. Hackett's entry to suggest that she did anything other than review the work performed by another attorney. As such, this work is duplicative and should not be compensated. The Students have not offered any compelling argument to the contrary. Accordingly, the fee award shall be reduced by the amount Ms. Hackett billed in 2008 for hours spent reviewing and considering correspondence regarding coach interviews.

The University also objects to the Students' request for $250.70 in fees for .73 hours spent in communicating with clients. See Docket No. [162], p. 17. The University reasons that

9

such communications are a normal part of client representation and should be absorbed by Flaster / Greenberg and the WLP. I disagree for several reasons. First, the University has not identified which attorney billed for this time, the date(s) upon which the time was billed, or even pinpointed a citation to the evidence supporting the contention that it was billed at all. Given the number of attorneys submitting time in this case as well as the number of years of billing at issue here, it is incumbent upon the University – if it intends to challenge an entry – to identify that entry in some way meaningful to the Court. Second, I would decline to adjust the Students' requested fee in this regard in any event because attorneys' communications with their clients are a vital part of the attorney – client relationship. Indeed, attorneys are under ethical obligations to communicate effectively with their clients. See Pennsylvania Rule of Prof. Conduct 1.4. Given that an attorney could be brought up on ethical charges for failing to communicate with her clients, I find that charging for such communication is reasonable, particularly in light of the University's failure to be at all specific in terms of the nature of its objection in this regard and in light of the *de minimis* nature of the request in this case.

The Students request $20,051.60 in fees for 47.84 hours expended in connection with the mediation sessions. The University contends that the hours requested are duplicative and redundant and references in support of its argument, this Court's ruling in Opinion and Order with respect to the earlier fee petition. In that Opinion and Order, I did find that compensating four attorneys for attending the mediation sessions would be excessive and unreasonable. See Docket No. [121], p. 27. Consequently, I reduced the Students' fees by eliminating the hours billed by the non-lead attorneys who had prepared for and attended the mediation sessions.

In an effort to avoid a similar ruling here, the Students contend that they only included time for multiple attorneys when the complexities of the case "demanded that they do so." See

10

Docket No. [166], p. 5. In other words, "Frietsche's command of information from interviews and on-site visits to SRU required that she participate in mediations. Fromson's study of the financial and other documentation provided by SRU during the monitoring required her presence. Fletman's presence was necessitated by her vast experience in class action litigation and negotiating complex settlements." Id.

After carefully reviewing the hours submitted by the Students' attorneys, I find that no reduction is necessary. I am convinced that the attorneys were mindful of my prior objections. The records reflect that Ms. Fletman eliminated 4 hours from her time at the mediation session on October 26, 2009 because Ms. Fromson billed for that mediation session. Similarly, Ms. Cann eliminated all time associated with the mediation on that date. With respect to the mediation on November 30, 2009, Ms. Frietsche eliminated all 7.25 hours that she originally billed for that mediation. Again, Ms. Cann eliminated all time associated with that mediation. Furthermore, all counsel billed travel time at half cost.

In so ruling, I find the present juncture to be materially different than that I faced when ruling on the prior fee petition. We are four years into a case that was amicably settled based upon the proposition that the University would achieve Title IX compliance. Compliance has not yet occurred. Presumably, the University would argue that compliance is elusive given the complicated and complex nature of Title IX and the evolving nature of the University's student population. If the University were to advance such an argument, then dividing the complexity of the case among several attorneys, thereby allowing each to focus on a narrow area, would seem perfectly reasonable. Pooling their knowledge for the mediation would have to occur, either by attending the mediation or by conferring beforehand. The University has objected to both methods. If the University were to dispute the characterization of this case as complex, one

would question why compliance remains elusive after so many years. In any event, I do not find the billing in this regard to be unreasonable.

The University also objects to what it characterizes as redundant and duplicative effort associated with work performed on the 2009 Settlement Agreement. Specifically, the University contends that Ms. Fromson billed 9.31 hours for work performed drafting, revising and editing the Settlement Agreement. The University does not object to Ms. Fromson's time. Yet Ms. Fletman also billed a total of 3.5 hours and Ms. Frietsche also billed a total of 2.5 hours for reviewing, revising or otherwise working on the Settlement Agreement. I agree with the University, particularly in light of the Students' failure to respond at all to this argument, that the work is duplicative and thus non-compensable. Ms. Fromson is being compensated at nearly $400 per hour. An attorney commanding such a rate should be capable of drafting a Settlement Agreement without requiring 6 hours of review by other attorneys. As such, I decline to award the Students fees associated with Ms. Fletman's and Ms. Frietsche's time in this regard.[4]

The University also disputes entries made on August 18, 2009 and December 2, 2009 by Ms. Fromson for communications with "Jess Kortz." The University claims to be unaware of Ms. Kortz and / or her connection with this case. See Docket No. [162], p. 21. The Students respond that Ms. Kortz is a University student-athlete, a softball team member and thus a class member. See Docket No. [166], p. 5 n. 6. The discussions with Ms. Kortz involved the Settlement Agreement. I see no reason to reduce or eliminate the fees in this regard given this explanation.

---

[4] The University also makes a reference to "conferences." It concedes that the Students did not include any duplicative or excessive time with respect to conferences and simply asks that they be compensated at a lower hourly rate. For the reasons set forth above, I find the requested rates to be reasonable and decline to award a lower amount.

12

Finally, the University objects to 2 hours of work performed by Ms. Frietsche on December 14, 2009. The billing entry reads "Draft, edit Plaintiffs' statement of issues in dispute." The University questions the relationship of this entry to the case. The Students offer no responsive explanation. Consequently, I agree with the University that compensation for the hours recorded by Ms. Frietsche on that date is inappropriate.

E. Reduction of the Lodestar

The University also asks for a reduction of the lodestar based upon two factors: limited success and the fact that the award comes from public funds. I reject the request on both counts. Obviously, an Amendment to a Settlement Agreement is, by its very nature, a compromise. Nevertheless, the Students did obtain success and should not be punished in terms of a fee reduction because they were willing to compromise.

I am also cognizant of the fact that the University is a public entity and, as such, the State System of Higher Education will bear the cost of any award of fees in this action. This will, in turn, have a negative effect on the taxpayers of Pennsylvania. Yet the taxpayers should look to the University's administrators, rather than to this Court or to the Students' attorneys, for an answer as to why fees are being paid. It is the University and its administrators who have failed – for more than 30 years – to achieve compliance with Title IX. The original Settlement Agreement was reached here in 2007. The Students filed a Motion to Enforce in 2009 because, despite its explicit acknowledgement that Title IX compliance had not been achieved, and despite agreeing to a specific plan for achieving compliance going forward, the University failed to achieve such compliance. Thus, while this Court is saddened by the thought of burdening the taxpayers with the fees in this case, the University bears the responsibility for the same.

F. Costs and Expenses

The University objects to several costs and expenses which it contends are erroneously sought. For instance, it objects to Ms. Frietsche's travel requests associated with the January 6 and 7, 2009 coaches interviews. The Students already concede that they do not request reimbursement of any of Ms. Frietsche's time associated with the January 6 and 7, 2009 interviews so any travel fees associated therewith similarly are not recoverable.

The University also objects to fees and expenses related to express mail and courier service costs. In the billing records both are described only as "delivery services." The University contends that it should not bear delivery costs simply because the Students chose to use attorneys who are located in three different offices in two different cities. The Students offer no rebuttal to this argument. I agree. The cost of transporting documents from one office to another is one that should not be borne by the University.

I reject, however, the University's objections to the cost of Court Transcription Services related to the coach interviews. Given the procedural juncture of the case at the time the costs were incurred, the Students had every right to expect that the memorialization of statements was necessary. Consequently, I decline to deny them the recovery of this cost.

I do, however, agree with the University that the fees associated with Westlaw / Pacer charges incurred on 10/30/07 are not recoverable. The Students offer no explanation regarding the reason such costs were incurred. Absent a reasonable explanation, I decline to award reimbursement.

## **Conclusion**

For the reasons set forth above, I find that certain of the Students' requests for fees are untimely. I further conclude that the proposed hourly rates are reasonable but that the requested number of hours submitted for compensation is, in certain instances, redundant and

14

excessive.  There will be no reduction in the lodestar.

**ORDER OF COURT**

AND NOW, this 5th day of November, 2010, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Plaintiffs' Motion for Attorneys' Fees and Costs (Docket No. [157]) is granted in part and denied in part. Fees are granted at the hourly rates requested by the Plaintiffs, though some of the hours requested are eliminated in their entirety as deemed untimely and others are reduced as excessive.

The Plaintiffs are required to submit to the Defendant and the Court a revised calculation of fees and costs, consistent with the rulings set forth in this Court's Opinion. The submission is due no later than November 17, 2010. The Defendant shall contact the Court no later than November 19, 2010 concerning any objections it has to the revised calculations. Absent any objections, the Court will shall Order the Defendant to pay the fees and costs set forth in the revised calculations.

By the Court:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. District Judge